AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT

### for the

### Southern District of Florida

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) Case No. 25-mj-6409-PAB |
| JIMES FERDINAND, | ) |
| | ) |
| | ) |
| *Defendant(s)* | |

<div style="border:1px solid red">

**FILED BY** _____ **SM** _____ **D.C**

**Jun 18, 2025**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FTL

</div>

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of ~~May 13, May 20,~~ May 23. and June 3, 2025 in the county of Broward in the
___Southern___ District of Florida , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 841 | Distribution of a Controlled Substance |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Benjamin Garnett, Special Agent ATF
*Printed name and title*

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by **Face Time**

Date: June 18, 2025

_____
*Judge's signature*

City and state: Ft. Lauderdale, Florida

Honorable Panayotta Augustin-Birch, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION FOR A CRIMINAL COMPLAINT

I, Benjamin Garnett, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), assigned to the Miami Field Division, and have been since December 2020. I am currently a member of the South Florida High Intensity Drug Trafficking Area (HIDTA) Task Force. As part of my duties as a Special Agent, I am responsible for conducting investigations of violations of federal laws, including but not limited to, those pertaining to firearms, narcotics, and firearms trafficking. I have conducted and participated in numerous investigations involving, but not limited to, the illegal possession and "straw purchasing" of firearms, carjacking, Hobbs Act Robbery, narcotics trafficking, and possession of a firearm in furtherance of narcotics trafficking.

2. Your affiant makes this Affidavit in order to establish probable cause to believe that, in the Southern District of Florida, Jimes Ferdinand ("FERDINAND") did knowingly and intentionally distribute a controlled substance, to wit: forty (40) grams or more of a mixture and substance containing a detectable amount of N-Phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, that is fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3. The statements contained in this Affidavit are based on my personal knowledge, as well as information provided by other individuals, including other law enforcement officials and my review of records and other evidence obtained during the course of this investigation. I have included only those facts that I believe are necessary to establish probable cause in support of an arrest warrant.

## PROBABLE CAUSE

### Controlled Purchase of 57 Grams of Fentanyl – May 23, 2025

4. On or about May 23, 2025, at the direction of law enforcement, a documented ATF Confidential Informant that has been deemed credible ("CI"), exchanged communications with FERDINAND to arrange the purchase of two (2) ounces of fentanyl from FERDINAND to take place on May 23, 2025. FERDINAND agreed to meet the CIs in the area of Funston Street and South State Road 7 in Hollywood, Broward County, Florida, in the Southern District of Florida to complete the transaction. All phone conversations were audio preserved and all text communications were preserved.

5. On or about May 23, 2025 in the late afternoon hours, an ATF UC and CI, equipped with audio/video recording equipment and ATF Investigative Funds, arrived in the area of Funston Street and South State Road 7 in Hollywood, FL. Upon arrival, the UC parked the UCV next to FERDINAND's 2019 black BMW X3 bearing Florida License Plate Registration DL07KY which FERDINAND was observed operating. FERDINAND walked to the UCV and entered the rear passenger seat of the UCV.

6. Once inside the UCV, FERDINAND handed the UC a clear plastic bag containing the suspected fentanyl. The UC weighed the fentanyl to confirm the weight was approximately two (2) ounces. The UC then handed FERDINAND $3,000.00 in ATF Investigative Funds. While discussing the narcotics, FERDINAND stated he has a firearm source that left prior to the UC and CI's arrival. FERDINAND stated his firearm supplier was Jamaican and received the firearms in large crates. FERDINAND stated the firearms were mostly new and the rifles were priced at $1,000.00 per firearm. FERDINAND stated the gun supplier was shipping most of the firearms to Jamaica but was also shipping some firearms to Haiti and Bahamas.

7. Additionally, FERDINAND claimed he had a military gun source who was building "ghost guns" (slang term used to describe Privately Made Firearms). FERDINAND stated he would pay $800.00 per gun and sell them for $1,500.00, indicating that FERDINAND is engaged in the business of dealing firearms. FERDINAND claimed the military gun source sold to a federal agent and was arrested in Georgia. FERDINAND then went to his vehicle and returned to the UCV with a cell phone. The UC observed FERDINAND replace the sim card in the phone prior to placing a call. FERDINAND stated he was calling his gun source, but he had to call from a certain phone number. FERDINAND called an unknown number and then placed the call on speaker. The UC could hear an unidentified male (UM) speaking with a Jamaican accent. FERDINAND asked the UM about obtaining more firearms. The UM stated he didn't have any extra firearms for sale. The UM stated the UC could purchase $5,000.00 worth of firearms in the next shipment. The UM claimed it would be a mixture of handguns and rifles. The UM stated a crate of firearms would be approximately 10-15 guns. FERDINAND stated he would let the UC know when his source was ready to sell the firearms. Afterward, FERDINAND exited the UCV and concluded the transaction with the UC and CI.

8. Following the transaction, the suspected fentanyl from the transaction was field tested and yielded a positive result for the presence of fentanyl. The field test positive fentanyl and packaging had an approximate weight of 57 grams. The field test positive fentanyl was submitted to the DEA Southeastern laboratory for chemical analysis. Laboratory analysis confirmed the substance was in fact N-Phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]propenamide, Fentanyl, with an approximate net weight of 55.92 grams. The controlled purchase with FERDINAND was captured on both video and audio recording, including FERDINAND's conversations with the UM regarding firearm sales.

**Controlled Purchase of a Firearm from FERDINAND – May 27, 2025**

9.  From on or about May 24, 2025, to on or about May 27, 2025, at the direction of law enforcement, the CI exchanged communications with FERDINAND to arrange the purchase one (1) firearm from FERDINAND on May 27, 2025. All phone conversations were audio preserved and all text communications were preserved.

10. On or about May 27, 2025, in the early afternoon hours, the CI and UC, equipped with audio/video recording equipment and ATF Investigative Funds, initially arrived at the area of Funston Street and South State Road 7 in Hollywood, Broward County, Florida to meet with FERDINAND. Upon arrival of the CI and UC, FERDINAND signaled for the UC to follow him. FERDINAND was observed driving a 2019 black BMW X3 bearing Florida License Plate Registration DL07KY. The UC acknowledged FERDINAND's request and followed him to the parking lot of Hampton Court Condominiums located at 5855 Washington Street, Hollywood, Broward County, Florida in the Southern District of Florida to conduct the purchase.

11. Upon arriving, FERDINAND exited his vehicle and entered the rear passenger seat of the UCV.  FERDINAND then handed the UC a blue leather pouch which contained a firearm for sale. The UC examined the firearm and then handed FERDINAND $800.00 in ATF Investigative Funds. The initial agreed upon price was $700.00, however the UC mistakenly overpaid FERDINAND $100.00 extra for a broker's fee. FERDINAND claimed he would look out for the UC on the next transaction.

12. During the transaction, FERDINAND stated to the UC that FERDINAND could put in an order with his source of firearms to provide additional firearms to the UC and it would take approximately two weeks to get the firearms. The UC advised FERDINAND that they would purchase $5,000.00 worth of firearms from FERDINAND's source. FERDINAND claimed it

would be a mixture of handguns and rifles.  FERDINAND purported his source would pick up the firearms in Orlando, Florida and transport them south using semi-trucks. FERDINAND exited the UCV and returned to the black BMW SUV.  The UC and CI exited the area and returned to the predetermined meeting location. The entirety of the controlled purchase of the firearm was video and audio recorded.

13. The firearm purchased from FERDINAND is fully described as a Taurus, G3C, 9mm pistol bearing serial number ABG654325.

14. During the conversation with the UC, FERDINAND stated to have routine contact with his firearms source and agreed to arrange future transactions indicating FERDINAND is engaged in the business of dealing in firearms.

15. A query of FERDINAND in the Federal Licensing System yielded negative results for FERDINAND being a licensed firearms dealer.

16. A Wage & Hour Query with Florida Department of Commerce indicates FERDINAND has not had taxable income since 2010.

17. On May 27, 2025, an ATF Interstate Nexus Expert conducted an examination of the Taurus, G3C, 9mm pistol bearing serial number ABG654325 and concluded that the firearm was manufactured outside the State of Florida and traveled in interstate and/or foreign commerce prior to its recovery in the Southern District of Florida.

### Controlled Purchase of 112 Grams of Fentanyl – June 3, 2025

18. On or about June 3, 2025, at the direction of law enforcement, the CI exchanged communications with FERDINAND to arrange the purchase of four (4) ounces of fentanyl from FERDINAND to take place on June 3, 2025. All phone conversations were audio preserved and all text communications were preserved.

19. On or about June 3, 2025 in the early afternoon hours, the CI and UC, equipped with audio/video recording equipment and ATF Investigative Funds, arrived at 5855 Washington Street, Hollywood, Broward County, Florida in order to conduct the purchase. Upon arrival, the CI placed a call to FERDINAND to ask his location. FERDINAND stated he was behind the UCV. The UC observed FERDINAND operating his black BMW SUV in the rear-view mirror. The UC then parked the UCV in front of building 5845 Washington St. FERDINAND parked his vehicle next to the UCV, exited his vehicle and entered the rear passenger seat of the UCV.

20. Once inside the UCV, FERDINAND handed the UC a plastic bag containing the suspected fentanyl that he pulled from his front waistband. The UC confirmed the weight and price, then handed FERDINAND $6,000.00 in ATF Investigative Funds for the approximately four (4) ounces of fentanyl. FERDINAND advised that he had to vacuum seal the bag because the fentanyl was "stink" (commonly used slang term to describe strong or potent narcotics based on officer training and experience). FERDINAND advised he gave the UC the best deal and that he normally sold an ounce of fentanyl for $1,800.00 to $2,000.00. The UC asked FERDINAND when the firearms would be ready. FERDINAND claimed his source stated he was selling new "sticks" for $2,000.00. It should be noted that the UC knows the term "sticks" to be street slang for AR style rifles based on officer training and experience. However, FERDINAND claimed he convinced his source to sell the UC the rifles for $1,000.00 each. FERDINAND advised if the UC spent $5,000.00 his source would provide approximately 2-3 rifles and handguns.

21. FERDINAND then exited the UCV, returned to his BMW SUV and exited the deal location.

22. Following the transaction, the suspected fentanyl from the transaction was field tested and yielded a positive result for the presence of fentanyl. The field test positive fentanyl and packaging

had an approximate weight of 112 grams. The field test positive fentanyl was submitted to the DEA Southeastern laboratory for chemical analysis. At this time, the DEA lab results are still pending.

### Controlled Purchase of 179 Grams of Fentanyl – June 18, 2025

23. On or about June 18, 2025, an ATF Undercover Agent (UC), exchanged communications with FERDINAND to arrange the purchase of six (6) ounces of fentanyl from FERDINAND to take place on June 18, 2025. All phone conversations were audio preserved and all text communications were preserved.

24. On or about or about June 18, 2025 in the early afternoon hours, the UC, equipped with audio/video recording equipment and ATF Investigative Funds, arrived at 5855 Washington Street, Hollywood, Broward County, Florida in order to conduct the purchase. Upon arrival, the UC placed a call to FERDINAND to ask his location. FERDINAND stated he was on the way to the UC.

25. Shortly thereafter, FERDINAND contacted the UC and instructed the UC to relocate to a shopping plaza parking lot located at 5674 Washington Street, Hollywood, FL 33023.

26. Upon arrival at 5674 Washington Street, Hollywood, FL 33023, the UC observed FERDINAND in the front passenger's seat of a blue Jaguar XEP250S bearing Florida license plate KVCG82. Shortly thereafter, FERDINAND exited the blue Jaguar his vehicle and entered the front passenger seat of the UCV.

27. While in the UCV, FERDINAND handed a white paper bag containing a clear vacuum sealed bag that was concealed by blue rubber gloves. The UC removed the clear vacuum sealed bag to confirm the fentanyl was inside. FERDINAND confirmed that all six (6) ounces of fentanyl

were in the bag. The UC then provided FERDINAND with $4,000.00 in ATF Investigative Funds and instructed FERDINAND to count the money.

28. Shortly thereafter, law enforcement responded to the UCV and apprehended FERDNINAND and retrieved the $4,000.00 in ATF Investigative Funds.

29. Following the transaction, the suspected fentanyl and packaging was weighed and had an approximate weight of 179 grams. The suspected fentanyl will be submitted to the DEA Southeastern laboratory for analysis. It should be noted that the characteristics of the suspected fentanyl had similar characteristics to the DEA lab confirmed fentanyl that was purchased from FERDINAND on May 23, 2025.

## **CONCLUSION.**

30. Based on the foregoing facts, I respectfully submit that there is probable cause to believe that Jimes FERDINAND ("FERDINAND") did knowingly and intentionally distribute a controlled substance, to wit: forty (40) grams or more of a mixture and substance containing a detectable amount of N-Phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, that is fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

Respectfully submitted,

Benjamin Garnett, Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF)

Attested to by the applicant in accordance with
the requirements of Fed. R. Crim. P. 4.1 by
FaceTime, on this 18th day of June 2025, at
Fort Lauderdale, Florida

HONORABLE PANAYOTTA AUGUSTIN-BIRCH
UNITED STATES MAGISTRATE JUDGE